UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Fujitsu Ten Corp. of America Employee
Benefit Plan - Indiana Employees, *et al.,*

    Plaintiffs,

v.                                                                                  Case No. 06-11897

Unicare Life & Health Insurance Co., *et al.*,      Honorable Sean F. Cox

    Defendants/Third-Party Plaintiffs,

v.

Michael O. Leavitt, Secretary of the Department
of Health and Human Services, and, The Centers
for Medicare and Medicaid Services,

    Third-Party Defendants.
_____/

## OPINION & ORDER

This is an ERISA dispute to determine which party is primarily responsible for paying the medical bills of a deceased individual named Steven Coyle. Plaintiffs filed this action seeking a declaration that Defendants are primarily liable, and that Plaintiffs are secondarily liable, for such expenses. Defendants then filed a third-party complaint against Michael O. Leavitt, Secretary of the Department of Health and Human Services, and the Centers for Medicare and Medicaid Services (collectively "Medicare"), seeking a declaration that Medicare is to pay primary for Coyle's medical expenses. Following discovery, the parties all agreed that there are no genuine issues of material fact for trial and that the matter should be decided upon motions. In an Opinion and Order dated November 6, 2007, this Court granted Medicare's Motion for Summary

Judgment and dismissed Medicare from this action. The matter is now before the Court on the two remaining motions for summary judgment: 1) Plaintiffs' Motion for Summary Judgment [Docket Entry No. 27]; and 2) Defendants/Third-Party Plaintiffs' Motion for Summary Judgment [Docket Entry No. 28]. The parties have fully briefed the issues and the Court heard oral argument on September 6, 2007. The Court concludes that the Medicare Secondary Payer Statute, 42 U.S.C. § 1395y ("the MSP") has no application to the remaining dispute between Plaintiffs and Defendants as to which of the two private plans is to pay primary for Coyle's expenses, and the Court shall grant summary judgment in favor of Plaintiffs for the reasons set forth below.

## BACKGROUND

Plaintiffs Fujitsu Ten Corp. of America Employee Benefit Plan - Indiana Employees ("the Fujitsu Plan"), Fujitsui Ten Corp. of America, as Plan Administrator ("Fujitsu"), and Genworth Life & Health Insurance Company ("Genworth") (collectively "Plaintiffs") filed their "Complaint for Declaratory Relief" on April 31, 2006. The following parties were named as defendants: Unicare Life & Health Insurance Company ("Unicare"), Visteon Systems LLC Health and Welfare Benefit Plan for Hourly Employees ("the Visteon Plan") and Visteon Systems LLC, as Plan Administrator ("Visteon") (collectively "Defendants"). Plaintiffs seek a declaratory judgment: 1) ordering Defendants to pay primary for all of Coyle's medical expenses at issue; 2) ordering Plaintiffs to pay secondary to Defendants for all of Coyle's medical expenses at issue; and 3) awarding Plaintiffs their costs, including reasonable attorney fees, pursuant to 29 U.S.C. §1132(g), incurred in bringing this action.

Discovery has concluded and the parties agree that there are no genuine issues of material

fact for trial. The following background facts are undisputed.

At all relevant times Steven Coyle was married to Ladeana Coyle.

On February 8, 1996, Ladeana Coyle was employed by Fujitsu and enrolled herself, her husband Steven and their four dependant children in the Fujitsui Plan. (C-5).[1] The Fujitsu Plan uses a third-party administrator, Key Benefit Administrator, Inc. ("Key Benefit") to process claims. (C-6). Genworth is the stop-loss carrier for the Fujitsui Plan. (C-7).

During calendar years 2002, 2003, and 2004, Ladeana Coyle had group health plan (as defined in 42 C.F.R. §411.101) coverage by virtue of her employment status with Fujitsu (as defined in 42 C.F.R. §411.404(c)). (C-8). Thus, during calendar years 2002, 2003, and 2004, Steven Coyle had coverage under the Fujitsu Plan. (C-9). During calendar year 2005, Ladeana Coyle had group health plan (as defined in 42 C.F.R. §411.101) coverage by virtue of her employment status with Fujitsu (as defined in 42 C.F.R. §411.404(c)) until November 14, 2005. (C-10). Thus, during calendar year 2005, Steven Coyle had coverage under the Fujitsui Plan until November 14, 2005. (C-11). Fujitsu employed 100 or more full-time or part-time employees on 50% or more of its regular business days during 2002, 2003, 2004, and 2005. (C-12).

Steven Coyle was also covered under a policy from Visteon. Steven Coyle retired from Visteon on August 31, 1999. (C-1). Visteon sponsors the Visteon Plan. (C-2). Unicare is the insurer and claims administrator for the medical benefits provided under the Visteon Plan. (C-3).

---

[1] In compliance with this Court's practice guidelines, the parties submitted statements of undisputed material facts in connection with each party's motion for summary judgment. For ease of reference, the Court shall refer to the statements of material facts submitted by the parties with respect to Medicare's motion as "C" followed by the appropriate paragraph number.

On his retirement date, Steven Coyle enrolled as a retiree in his former employer's health benefit plan for coverage for himself, his spouse Ladeana Coyle, and their four dependent children. (C-4).

Medicare is a federally funded and administered program of health insurance for persons who are age 65 and over, and some younger disabled individuals. 42 U.S.C. §1395 *et seq*. (C-13). Steven Coyle became entitled to Medicare on the basis of disability on September 1, 2002. (C-14 & 15).

During 2003, Steven Coyle was diagnosed with a number of serious medical conditions. As a result of those diagnoses, he required extensive medical treatment, including a liver transplant in 2004. Steven Coyle died on December 10, 2005. (C-19).

Thus, during the time that Mr. Coyle incurred significant medical expenses, he was covered under two private plans and was also covered under Medicare.

Some unusual issues are created by the multiple coverage afforded to Mr. Coyle. It is undisputed that : 1) If Mr. Coyle was not covered by the Fujitsu Plan, Medicare would be his primary source of coverage and the UniCare Policy would provide secondary coverage (*i.e.*, as between Medicare and UniCare alone, UniCare would be primary); and 2) If Mr. Coyle was not covered by the UniCare Plan, Fujitsu would be his primary source of coverage and Medicare would provide secondary coverage (*i.e.*, as between Fujitsu and Medicare alone, Fujitsu would be primary).

On April 31, 2006, Plaintiffs filed this action against Defendants, seeking a declaration that, as between the two private plans, Defendants are to pay primary for approximately $500,000 in unpaid medical expenses incurred by Mr. Coyle prior to his death. Thereafter, Plaintiffs filed

4

a third-party claim seeking a declaration that Medicare is to pay primary. In an Opinion & Order dated November 6, 2007, however, this Court granted Medicare's Motion for Summary Judgment and dismissed Medicare from this action.

The matter is currently before the Court on the remaining parties' cross-motions for summary judgment.

Standard of Decision

Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

I.      Does The MSP Apply To This Action?

The first issue the Court must determine is whether the MSP applies to this case, given that Medicare has already been dismissed from this action.

In sum, Plaintiffs contend that this coverage dispute is between Plaintiffs and Defendants to determine which of those two private plans is the primary payer of Coyle's expenses. Plaintiffs contend that Medicare has no interest in which of those two plans is declared primary, and that Medicare has no risk in this case and has no claims of its own against any party. They claim that because the dispute is simply between two private insurers, the MSP has no application to this case. Plaintiffs claim that Defendants improperly brought Medicare into this case in order to try to invoke the MSP, although Defendants had no legitimate claim against

Medicare. Plaintiffs claim that, like the situation in *Perry,* once Medicare was dismissed from this action, Medicare has no risk whatsoever in this action and the MSP has no application to the remaining claims. *Perry v. United Food and Commercial Workers Dist. Unions*, 64 F.3d 238 (6th Cir. 1995).

Defendants' position is summarized in the following paragraph from their Response Brief:

> Although the Plaintiffs do not take their position to its logical conclusion, the reality of their position is that Medicare would be affected if their claim that the UniCare Policy is primary were to prevail. Despite Plaintiffs' argument that the Fujitsu Plan has never argued that it is secondary to Medicare, putting the UniCare Policy ahead of the Fujitsu Plan (a primary plan) is, in fact, an attempt to put Medicare first, because coverage under the UniCare Policy is ALWAYS secondary to Medicare for Medicare-eligible retirees such as Mr. Coyle. (Ex. B, The UniCare Policy, p. 63.) And attempting to put Medicare coverage ahead of a primary plan is directly contrary to the MSP rules. Clearly, a request for such relief is inappropriate.

(Defs.' Resp. Br. at 11-12). They assert that "Plaintiffs' attempt to compel UniCare to pay Mr. Coyle's Medicare Parts A and B expenses on a primary basis results in an improper circumvention of the MSP statute" because "[i]f the Fujitsu Plan were to succeed in moving the UniCare Policy ahead of itself, the UniCare Policy, and the Providers in turn, would have to look to Medicare to cover the bulk of Mr. Coyle's expenses first." (Defs.' Resp. Br. at 12 n.8). They claim that "[t]he very intent of the MSP statute is to transfer primary payer status to active group health plans such as the Fujitsu Plan, and if such a plan could avoid its primary payer obligation by suing a retiree plan that pays behind Medicare, the MSP statute would be too easily circumvented. Such a result is just not permissible under the MSP statute." (*Id.*). Defendants offer no authority, however, to support its position that the result the Fujitsu Plan seeks here is

6

not permissible under the MSP statute.

Based on *Perry*, the Court concludes that the MSP has no application to the remaining dispute between these two private plans as to which plan pays primary.

In *Perry*, Mr. Perry had been covered under Medicare and two private plans: "Metlife" (as a retired worker) and "the Fund" (via his wife's current employment status). *Perry v. United Food and Commercial Workers Dist. Unions*, 64 F.3d 238 (6th Cir. 1995). Following his death, Mr. Perry's estate brought suit against the two private plans and the Secretary of Health and Human Services ("HHS") claiming that significant medical expenses incurred by Mr. Perry were covered by the private plans and by Medicare. HHS was later dismissed from the action by the district court after it filed a motion to dismiss. The two remaining defendants filed cross-motions for summary judgment. In ruling on those motions, the district court did what Defendants/Third-Party Plaintiffs ask the Court to do here. That is, the district court ruled that under the MSP, the Fund (the plan covering Mr. Perry via his wife's current employment status) was the primary payer, Medicare was the secondary payer, and Metlife (the plan covering Mr. Perry as a retired worker) was the tertiary payer.

The Sixth Circuit reversed, stating that the district court erred in relying on the MSP statute to find that the Fund was the primary payer. It noted that "at no time during this litigation has the Fund ever claimed that Medicare was the primary payer," and that the contest as to who was the primary payer was always between Metlife and the Fund. The opinion states, in pertinent part, that:

> The Fund never claimed Medicare was the primary payer of Mr. Perry's medical expenses . . .Thus, the continued fiscal integrity of the Medicare program was not jeopardized. **In fact, Medicare was at no risk whatsoever after the district**

7

> **court granted the Secretary of Health and Human Service's motion to dismiss**. The MSP statute therefore does not apply . . .

*Id.* at 244 (emphasis added).

Here, as in *Perry,* suit was brought against private plans. Although Defendants brought Medicare into the action in an attempt to invoke the MSP for its own benefit, like the situation in *Perry*, Medicare has been dismissed from the action and the dispute over which private plan is to pay primary for Mr. Coyle's expenses is between Plaintiffs and Defendants. The Court agrees with Plaintiffs that Medicare "has no dog in that fight." The MSP and its regulations simply do not address the question of who must pay first as between two non-Medicare insurance plans. *Baptist Memorial Hosp. v. Pan American Life Ins. Co.*, 45 F.3d 992, 997 (6th Cir. 1995). The Sixth Circuit has explained that the MSP is silent on the question of whether Plaintiff's benefits are secondary to Defendants's benefits or "vice versa. That question is left to the contracts themselves." *Id.* In other words, the "sole interest of Congress in enacting the MSP was to ensure that Medicare would not have to pay ahead of private carriers in certain situations. Where that interest is not affected - and it does not seem to be here - we see no reason why the pertinent contractual provisions should not be enforced in accordance with their terms." *Id.* at 998.

The Court therefore concludes that the MSP has no application to the dispute between Plaintiffs and Defendants as to which private insurer is to pay primary and that the dispute is to be resolved by examining the terms of the contracts.

II.     <u>Which Private Plan Pays Primary Based Upon The Contract Terms?</u>

Both the Fujitsu Plan and the UniCare Plan contain coordination of benefits ("COB") provisions. Fujitsu and UniCare disagree on how the applicable COB provisions are to be

construed and disagree on which plan is to pay primary for Coyle's medical expenses and which plan is to pay secondary for such expenses. (Pls.' Compl. at ¶ 20; Defs.' Ans. at ¶ 20).

    A.    Who Pays Primary Under The Terms Of The Fujitsu Plan?

It is undisputed that the relevant COB language in the Fujitsu Plan, attached to Plaintiffs' Motion for Summary Judgment at Exhibit 9, provides as follows:

> **5.10 Coordination of Benefits**
>
> *Definitions*
> . . . .
> The term ***order of benefits determination*** shall mean the method for ascertaining the order in which the plan renders payment hereunder. The principle applies when another plan has a coordination of benefits provision.
>
> *Application*
>
> Under the order of benefits determination method, the plan which is obligated to pay its benefits first is known as the primary plan. The plan which is obligated to pay additional benefits for allowable expenses not paid by the primary plan is known as the secondary plan. Where another plan contains a coordination of benefits provision, the following order of benefits determination will establish the responsibility for payment hereunder:
>
>     A.    If the patient has individual insurance coverage which covers medical expenses, that plan will be deemed the primary plan. If the patient does not have such individual insurance coverage, the health coverage which covers the patient as an employee shall be deemed the primary plan and is obligated to pay benefits before the health coverage covering the patient as a dependent.
>
>     B.    The plan covering the patient as a dependent of a person whose birthday anniversary occurs earlier in the calendar year will be deemed to be the primary plan and is obligated to pay before the plan covering the patient as a dependent of a person whose birthday anniversary occurs later in the calendar year. If the birthday anniversaries are identical, the plan which has been in force the longer period of time shall be deemed to be primary.

. . . .

In the event of divorce or legal separation, the following order will establish responsibility for payment. If this order of benefit determination is not recognized by the plan being coordinated with, order will be determined at the option of the plan supervisor on a case-by-case basis.

- A. If a court decree has determined financial responsibility for a child's health care expenses, the plan of the parent having that responsibility pays first.

- B. The plan of the parent with custody of the child pays before the plan of the other parent or the plan of any stepparent.

- C. The plan of the stepparent married to the parent with custody of the child pays before the plan of the parent not having custody.

- D. Where the order of payment cannot be determined in accordance with the provisions above, the primary plan shall be deemed to be plan which has covered the patient for the longer period of time.

- E. In the case of an inactive employee, the benefits of a plan which covers a person as an employee who is neither laid-off nor retired (or as that employee's dependent) are determined before those of a plan which covers that person as a laid off or retired employee (or as that employee's dependent). If the other plan does not have this rule, and if, as a result, the plans do not agree on the order of benefits, this rule is ignored.

- F. If a person, whose coverage is provided under a right of continuation pursuant to federal or state law, is also covered under another plan, the benefits of the plan covering the person as an employee (or as the employee's dependent) will be determined first and the benefits under the continuation coverage will be determined second.

As the primary plan, the plan will provide payment in accordance with the provisions of this plan.

As a secondary plan, the plan will provide payment for allowable expenses and services of hospitals and physicians, but only to the extent that payment for such hospital services and services of physicians are not provided by the primary plan or other secondary plans.

> In no event will total payment by the plan exceed the amount which would have been paid as primary plan.
>
> The plan shall be considered to be the secondary plan when the other plan does not contain a coordination of benefits provision. The total payment by the plan for hospital services and physician services shall not exceed the amount which would have been paid as a secondary plan.

(Ex. 9 to Pls.' Motion for S.J. at 72-74)(emphasis in original).

Plaintiffs' position as to who pays primary under the terms of the Fujitsu Plan is two-fold. First, Plaintiffs assert that the following provision should apply:

> A. If the patient has individual insurance coverage which covers medical expenses, that plan will be deemed the primary plan. If the patient does not have such individual insurance coverage, the health coverage which covers the patient as an employee shall be deemed the primary plan and is obligated to pay benefits before the health coverage covering the patient as a dependent.

Plaintiffs claim that there is no evidence that Mr. Coyle had individual insurance coverage here, so therefore "the health coverage which covers the patient as an employee shall be deemed the primary plan and is obligated to pay benefits before the health coverage covering the patient as a dependent." Plaintiff's note that Mr. Coyle was only covered by the Fujitsu policy as a dependent and assert that "Coyle was insured under the UniCare policy as a retired employee of Visteon. Therefore, UniCare" is primary under the above language. (Pls.' Motion for S.J. at 5).

In their Reply Brief, Plaintiffs note that Defendants claim that the first COB does not apply and ask the Court to apply Section 5.10(E). Plaintiffs assert that even if the first COB rule does not apply, Defendants' position must be rejected because there is an earlier option in the rules that would apply - Section 5.10(D). Option D precedes E and provides that where "the order of payments cannot be determined in accordance with the provisions above, the primary

11

plan shall be deemed to be the plan which has covered the patient for the longer period of time." Plaintiffs state that Mr. Coyle began working for Visteon in 1986, at which time he became covered under its plan, while Mr. Coyle did not become eligible under the Fujitsu Plan until his wife's employment began approximately ten years later, in 1996. Thus, Plaintiffs claim that the UniCare Plan is primary under the Fujitsu COB rules.

Defendants respond by asserting that Plaintiff's first argument is without merit because the first COB rule in the Fujitsu COB provision states only that the plan covering the patient as an "employee" goes before the plan covering the patient as a dependent. They state that Mr. Coyle was not covered under the UniCare Policy as an employee after August 31, 1999, but rather was covered as a "retiree." They claim that Plaintiff's argument must be rejected because it contradicts the well-established meaning and use of the term "employee" as excluding "retirees."

Defendants claim that the only applicable COB rule in the Fujitsu Plan is found at Section 5.10(E), the "Inactive Employee" rule. Defendants claim that Fujitsu is primary under that rule. Defendants do not address whether or not Section 5.10(D), which precedes 5.10(E), applies or not.

Based on the materials and arguments submitted, the Court concludes that the first COB rule does not apply because Coyle was covered as a "retiree," not as an employee, at the times at issue. The Court further concludes that the next COB rule that would apply is Section 5.10(D) and, under that rule, Defendants are to pay primary because the UniCare Plan covered Coyle for a longer period of time. Thus, when considering the terms of the Fujitsu Plan alone, the Court concludes that the UniCare Plan is primary.

B.  Who Pays Primary Under The Terms Of The UniCare Policy?

Unlike the Fujitsu Plan, the parties do not agree as to the provisions of the UniCare Plan that should be applied in order to determine who is to pay primary for Coyle's expenses.

Both parties appear to agree that the Court should look to the COB provision in the Visteon Plan's summary plan description ("SPD"), as that term is defined under ERISA, in order to determine who is to pay primary under the plan. The parties do not agree, however, on which document submitted to the Court is the SPD.

Plaintiffs claim that the document attached as Exhibit A to Defendants' Motion for Summary Judgment is not a SPD because it does not contain all of the information that is required by 29 U.S.C. §1022. They further contend that the Visteon SPD is specifically included in Exhibit B - which identifies itself as the SPD for the employee benefit plan (*See* Ex. B to Defs.' Motion at 74). They contend Exhibit A, in contrast, describes itself as an "overview" booklet and cannot be considered a SPD and it is not part of the ERISA plan. Plaintiffs rely on several cases, including *Gridley v. Cleveland Pneumatic, Co.*, 924 F.2d 1310, 1317 (3rd Cir. 1991).

In response, Defendants assert that they only attached the relevant portions of the document they attached as Exhibit A to their motion instead of the complete document. They claim to attach the entire document as Exhibit O to their Reply Brief. They assert that the document contains all of the information that is required by 29 U.S.C. §1022 and therefore the COB section in the Visteon SPD must be given full force and effect. Defendants did not respond to Plaintiffs' argument that Exhibit B identifies itself as the SPD or the authorities cited by Plaintiffs.

The Court concludes that the document attached as Exhibit B to Defendants' Motion is the SPD and contains the controlling terms of the UniCare Policy.

Page 74 of the document submitted as Exhibit B to Defendants' Motion expressly provides that "This booklet is the Summary Plan Description of your employee benefit plan." (Ex. B to Defs.' Motion at 74). It further provides that the "contract between the parties consists of this Group Policy, the Policyholder's application and the applications, if any, of each qualified employee" and that "any approved change[s] will be added to this Group Policy in writing." (*Id.* at 9)

Although Defendants label Exhibit O to their Reply Brief as the "Complete Visteon Spd," unlike the above document, it contains no language identifying it as such. Moreover, while that overview booklet does contain information regarding the plan, it also expressly provides as follows:

> Official Plan Documents
>
> Every attempt has been made to make this as detailed a handbook as possible. However, if this handbook inadvertently says anything that disagrees with the official contracts that govern each component of the Plan, the contracts are followed to determine your benefits.

(Ex. O to Defs.' Reply Br. at H-3).

Accordingly, the Court concludes that the document attached as Exhibit B to Defendants' Motion is the SPD and contains the controlling terms of the UniCare Policy. It contains a COB Provision that provides, in pertinent part:

> **COORDINATION OF BENEFITS PROVISION**
>
> This provision applies to person covered by the Group Policy and one or more other medical plans. In this case, the plans together may limit their total benefits

as explained in Section III - "Effect Of This Provision On The Benefits Of This Plan."

. . . .

When there are more than two plans covering a person, this plan may be a primary plan as to one or more other plans, and it may be a secondary plan as to a different plan or plans.

. . . .

**Section II - Benefit Determination**
The sequence in which plans will cover allowable expenses is determined by the plans. Plans with no coordination provision are always first. As to plans that have coordination provisions, this plan will determine the order of benefits using the first of the following rules that apply:

1. The benefits of the plan that cover the person as other than a dependent are determined before those of the plan that cover the person as a dependent.
. . . .

4. The benefits of a plan which covers a person as an employee who is neither laid off nor retired or as such employee's dependent are determined before those of a plan which covers that person as a laid off or retired employee or as such employee's dependent. However, if the other plan does not include this rule, and each plan determines its benefits after the other, this rule will not be applied.

5. The benefits of the plan that cover the person for a longer period of time are determined before those of the plan that covered that person for a shorter period of time.

(UniCare Policy at 65-67)(bolding in original).

Plaintiffs contend that Mr. Coyle was covered under the Fujitsu Plan as a dependent, while he was covered under the UniCare Plan as a retiree (*i.e.*, as other than a dependent). Thus, they assert that under the first rule listed above, UniCare is to pay primary under the UniCare Policy.

Defendants do not contest that under the plain language of the above COB provision, UniCare would be primary. Rather, Defendants advance other arguments in order to avoid such

a result including: 1) an additional COB provision should be read into the Policies by virtue of a Michigan statute; and 2) there is an ambiguity in the contract terms that should be resolved via the NAIC Model COB Rules.

The Court concludes that under the plain language of UniCare's COB provision, UniCare is to pay primary. As set forth in Section II. A. of this Opinion & Order, the Court also concluded that UniCare is to pay primary under the language of the Fujitsu Plan. As detailed below, the Court also rejects each of Defendants' arguments advanced to alter these conclusions.

### C. Should Additional COB Provisions Be Read Into The Policies By Virtue Of M.C.L. 550.253(1)(a)?

Michigan has a statute, M.C.L. §550.253, which provides, in pertinent part, that:

(1) Any policy or certificate delivered or issued for delivery in this state in connection with a group disability benefit plan may contain provisions coordinating the benefits or services that would otherwise be provided to a covered person. Any such policy or certificate that contains a coordination of benefits provision shall provide that benefits will be payable as follows when coordinating with another policy or certificate that also has a coordination of benefits provision:

(a) The benefits of a policy or certificate that covers the person on whose expenses the claim is based other than as a dependent shall be determined before the benefits of policy or certificate that covers the person as a dependent. However, if the person is a medicare beneficiary and as a result of the provisions of title XVIII of the Social Security Act, Chapter 531, 49 Stat., 620, 42 U.S.C. 1395 to 1395b, 1395b-2, 1395c to 1395i, 1395i-2 to 1395i-4, 1395j to 1395t, 1395u to 1395w-2, 1395w-4 to 1395yy, and 1395bbb to 1395ccc, medicare is secondary to the policy or certificate covering the person as other than a dependent, then the order of benefits is reversed and the policy or certificate covering the person as other than a dependent is secondary and the policy or certificate covering the person as a dependent is primary.

M.C.L. §500.253(1)(a).

Defendants assert that the policies must be interpreted consistent with Michigan law.

They assert that to the extent the policies do not contain such a provision, M.C.L. § 550.253(1)(a) must be read into them by the Court for purposes of determining which plan is to pay primary. Defendants assert that as a result of the above statute, "the 'Inactive Employee' provision supercedes the 'Dependent/Non-Dependent' clause where a Medicare beneficiary, like Mr. Coyle, is involved." (Defs.' Br. at 7).

In response, Plaintiffs state that "Defendants interpret the Statute to mean that whenever a person is a Medicare beneficiary, the policy covering the individual as a dependent is primary even if no claim has been asserted against Medicare." Plaintiffs assert that interpretation is incorrect, but contend there is no reason to even address the issue because Michigan law cannot be applied to the Fujitsu Plan because the statute at issue is preempted by ERISA.

The Court agrees. The Sixth Circuit has explained that if a state law relates to an ERISA benefit plan it is preempted; "but if the state law 'regulates insurance' it is not preempted. But an ERISA covered employee benefit plan that provides insurance coverage is 'deemed' not to be an insurance company for purposes of state laws regulating insurance, and ERISA, therefore, preempts such state laws." *Liberty Mutual Insurance Group v. Iron Workers Health Fund of Eastern Michigan*, 879 F.2d 1384, 1386-87 (6th Cir.1989); *see also Lincoln Mutual Cas. Co. V. Lectron Prods., Inc. Employee Health Benefit Plan,* 970 F.2d 206 (6th Cir. 1992). The Supreme Court has held that ERISA preempts all state regulation of self-funded ERISA plans. *FMC Corp. v. Holliday*, 498 U.S. 52, 62-64 (1990). Here, it is undisputed that the Fujitsu Plan is self-funded. Accordingly, M.C.L. §500.253(1)(a) cannot be read into the Fujitsu Plan.

D. Is There An Ambiguity That Should Be Resolved Via the NAIC Model COB Rules?

Finally, Defendants assert that any ambiguity between the two plans should be read consistently with the NAIC Model COB Rules in order to resolve the "circularity problem that would otherwise has existed where a claimant was seeking to recover hospital expenses both from Medicare and from more than one private insurance carrier" that was discussed in *Baptist Memorial Hosp.* Defendants do not rely on that case, however, for their position that any ambiguity should be read consistently with the NAIC Model. Rather, they rely on two cases from outside the Sixth Circuit with respect to that argument. *McGurl v. Trucking Employees of N. Jersey Welfare Fund, Inc.*, 124 F.3d 471 (3rd Cir. 1997); *PM Group Life Ins. Co. v. W. Growers Assur. Trust*, 953 F.2d 543 (9th Cir. 1992). Defendants contend that if so read, the UniCare Policy would be secondary to Medicare and the Fujitsu Plan primary to Medicare.

An ambiguity exists when a contract can be interpreted in two different ways. In their brief, however, Defendants do not articulate what ambiguity they believe exists here. (*See* Defs.' 6/25/07 Br. at 9). Absent establishing an ambiguity in the policy terms, the Court will not consider the Model rules because neither party chose to incorporate them into their policy.

**CONCLUSION & ORDER**

For the reasons set forth above, the Court concludes that under the terms of the two policies, UniCare is to pay primary for Mr. Coyle's expenses. Accordingly, **IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED** and Defendants' Cross-Motion for Summary Judgment is **DENIED.**

The Court further directs counsel to confer in order to agree upon, and submit to the

Court, a proposed final judgment in this matter, given the above rulings by the Court. The status of such discussions shall be reported to the Court in writing on **December 12, 2007.** If the parties cannot agree upon the language of the final judgment, the Court may issue an order requiring the submission of proposed final judgments, and briefs in support of same.

    **IT IS SO ORDERED**.

                                            S/Sean F. Cox
                                            SEAN F. COX
                                            UNITED STATES DISTRICT COURT JUDGE

Dated: November 21, 2007

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing order was served upon counsel of record via the Court's ECF System and/or U. S. Mail on November 21, 2007.

                                            s/Jennifer Hernandez
                                            Case Manager to
                                            District Judge Sean F. Cox